UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| PAMELA MCKEEVER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 7:12-CV-217-O-BL |
| | § | ECF |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

### REPORT & RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Pamela McKeever (McKeever) seeks judicial review of an administrative decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act. The United States District Judge referred this case to the United States Magistrate Judge.

### BACKGROUND

On October 14, 2009, the claimant filed a Title II application alleging a disability beginning September 29, 2009. Prior to claiming disability, McKeever worked at a convenience store where she started off as a cashier and was later promoted to manager. (Tr. 47.) Because the convenience store was understaffed, she ended up working everyday for eighteen hours a day for approximately a month and a half straight. This resulted in a breakdown that led to her hospitalization at Red River Mental Hospital for suicidal thoughts. (Tr. 48.) The breakdown along with previous incidents led

doctors to diagnose her with agoraphobia–an anxiety disorder characterized by feeling uncomfortable and unsafe in public environments. (Tr. 58.) Because of this anxiety, McKeever testified that she only leaves the house now with her mother, approximately twice a week, and even had to move houses because of problems she had with her landlord. (Tr. 60.)

Beyond mental impairments, McKeever suffers from right wrist impairments due to a fracture. The injury causes her trouble when she tries to hold anything more than ten pounds for more than thirty minutes. At the hearing, she testified that she is unable to pick up a twenty-pound sack of potatoes on a regular basis without pain. (Tr. 24, 51-54.) Further, she testified as to having pain in her feet caused by plantar's fasciitis. Though she tried othotics to treat the pain, they eventually stopped working and now she alleges that she can only walk about fifty feet before she begins to experience pain and must sit down for a while. (Tr. 24, 56-57.)

Following a hearing on August 4, 2011, an Administrative Law Judge (ALJ) determined on August 19, 2011, that McKeever was not disabled. Specifically, the ALJ held that although McKeever did suffer from severe impairments, namely degenerative joint disease status post right wrist fusion and major depressive disorder recurrent, the impairments did not meet or equal any of the impairments listed in Appendix 1 of the governing regulations. Further, the ALJ found that she had the residual functional capacity (RFC) to perform light work with certain limitations. The ALJ concluded that based on the vocational expert's (VE) testimony, there existed jobs in significant numbers in the national economy that she can perform . The Appeals Council denied review on November 17, 2012.  Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

**STANDARD OF REVIEW**

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2011).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2011). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The social security regulations state that an individual's RFC represents "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545, 416.945.

Judicial review of a decision by the Commissioner is limited to two inquiries: a court must determine "whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports the decision to deny benefits." *Audler*, 501 F.3d at 447; 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

## DISCUSSION

The issue in this case turns on whether the ALJ supported his step five determination–that there are jobs in existence which McKeever could perform–with substantial evidence based on the RFC finding made at step four. In applying the five-step sequential process, the ALJ determined that McKeever suffered from a combination of several severe impairments including: "degenerative joint disease status post right wrist fusion, plantar fasciitis, sleep apnea, and major depressive disorder-recurrent." (Tr. 20.) After finding that the combination of impairments did not meet or equal a listed impairment, the ALJ found that McKeever:

> has the residual functional capacity to perform light work . . . except no more than frequent handling with the right wrist/arm; moderate limitations in the areas of processing and carrying out complex instructions; and required to work in relative isolation with limited contact with peers, *supervisors*, and the general public. (Tr. 23)(emphasis added).

At step five, the ALJ relied on the VE's testimony in response to two hypothetical questions regarding whether significant number of jobs existed which McKeever could perform. The initial hypothetical question posed to the VE at the hearing stated:

> [Assume] a wide range of light work. However, with respect to handling, there would be no more than frequent handling with the right wrist and arm. In non-exertional areas . . . this individual would possess moderate limitations in the areas of processing and carrying out complex instructions . . . this individual would work in relative isolation with limited contact with peers and coworkers. . . ." (Tr. 67-68.)

Based on this hypothetical, the VE responded that such a person could perform three light, unskilled jobs.

The second hypothetical question posed to the VE stated:

> Assume[] the same vocational factors along with light work. However, this individual in the area of handling would perform no more than occassional lifting of 20 pounds with the right hand. This individual also in the area of social interaction possesses a diminished ability to interact appropriately with peers and coworkers and *supervisors* on a consistent basis." (Tr. 68-69) (emphasis added).

Based on this hypothetical, the VE responded that there would be no work available to such a person.

When comparing the hypothetical questions asked by the ALJ to the RFC assessment he stated in his opinion, it is apparent that they all three differ. The important distinction, for purposes of this case, involves the use of the word "supervisor." Although the word "supervisor" is absent in the initial hypothetical posed by the ALJ, the ALJ later includes it in his RFC finding. McKeever alleges that this difference resulted in a hypothetical question to a VE that did not reasonably incorporate all the limitations later recognized by the ALJ. Because the ALJ relied solely on the VE's testimony in making his step five finding, the Court must decide whether the hypothetical posed by the ALJ was indeed defective.

Courts are in agreement that a defective hypothetical question posed to a VE cannot form the basis of finding that a claimant is not disabled. *E.g., Boyd v. Apfel*, 239 F.3d 698, 706-07. In determining whether an ALJ's hypothetical question is defective requires courts to apply the standard first established in *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). The standard requires that:

> 1) The hypothetical reasonably incorporates all the disabilities of the claimant recognized by the ALJ; and
>
> 2) The claimant, or his representative, [be] afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purpoted defects in the hypothetical question.

Thus, a determination based on a defective question cannot constitute substantial evidence. *Id.*

Turning back to the facts in this case, McKeever alleges that the lack of the word "supervisor" in the initial hypothetical makes the VE's response to the hypothetical defective when

used to support the ALJ's RFC finding which incorporates the word "supervisor." In support, she cites *Medley v. Astrue*, 2011 WL 6840576, at *3-4 (N.D. Tex. Dec. 29, 2011). In that case, the court held that where the question to the VE included "coworkers," but the ALJ's later RFC assessment included limitations as to both "coworkers" as well as "supervisors" the question was defective under the *Bowling* standard. *Id.* Further, she argues that when the word "supervisor" was included in the second hypothetical posed to the VE, the VE responded that no jobs existed for which McKeever could perform. (Tr. 68-69.) This, therefore, shows that had the ALJ included "supervisor" in the initial hypotethical, the VE's testimony would have been different.

The Commissioner counters that the hypothetical was not defective because the second hypothetical also differs from the first hypothetical in that it also calls for only occasional handling of the right arm. According to the Commissioner, it is this change in exertional limitations and not the inclusion or exclusion of the word "supervisor" that changes whether McKeever can perform the jobs in question. While this argument may in fact be true, it is also equally likely that the case mirrors the situation addressed in *Medley*. Because the Court cannot assume what the VE would have testified to had the ALJ included the word "supervisor" in his initial hypothetical, further findings and evidence are necessary. The Court, therefore, recommends that the case be reversed and remanded for further proceedings to address the step five issue and obtain further testimony from the VE.

## CONCLUSION

Based upon the foregoing discussion of the issue, the evidence, and the law, this court recommends that the United States district judge **REVERSE & REMAND** the case for further proceedings consistent with this report and recommendation.

-7-

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

DATED this 28$^h$ day of February, 2014.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**